James Sherman **TATE, Jr., M.D., and the National Alliance Against Racism and Political Oppression, Las Vegas Affiliate, Plaintiffs,**

v.

Cheryl A. **LAU, Secretary of State; Dale A.R. Erquiaga, Deputy Secretary of State; City of Las Vegas, Las Vegas City Attorney's Office, Beth Kadlec, Former Deputy City Attorney; Las Vegas Metropolitan Police Department; Officer J. Pillette; Sgt. G. Hood; Officer Fisher, Nevada Highway Patrol; Trooper Kevin Moore; Sgt. Philip Dart; Nevada Department of Motor Vehicles; Robert G. Anselmo, Deputy Director DMV; Tina Jodra, Supervisor II for DMV; Nevada Conference of Police and Sheriffs; O.C. Lee, President of Nevada Conference of Police and Sheriffs; Samuel R. Smith, Secretary/Treasurer of Nevada Conference of Police and Sheriffs; and Does I through L, individually and in their official capacities, Defendants.**

No. CV–S–93–1036–PMP (RJJ).

United States District Court,
D. Nevada.

Oct. 11, 1994.

Geraldine Kirk–Hughes, Las Vegas, Lennox S. Hinds, Stevens, Hinds & White, P.C., New York City, for plaintiffs.

Lona Monson, Deputy City Atty., Las Vegas, for City of Las Vegas, Kadlec, Fisher.

Walter R. Cannon, Rawlings, Olson & Cannon, Las Vegas, NV for LVMPD, Pillette, Hood, NV Conf. of Police & Sheriffs, Lee & Smith.

Kateri Cavi, Deputy Atty. Gen., Carson City, NV for Lau, Erquiaga, DMV, Anselmo, Jodra, NHP, Moore, Dart.

## ORDER

PRO, District Judge.

### I. Factual Background

In September 1990, Plaintiff Las Vegas Affiliate of the National Alliance Against Racism and Political Repression ("Alliance") began circulating a petition for a civilian control board for the Las Vegas Metropolitan Police Department ("Metro"). In October 1991, a copy of the petition ("Petition") was forwarded to the Secretary of State for filing. Defendant Dale A.R. Erquiaga, Deputy Secretary of State, returned the Petition with a letter dated October 24, 1991, stating that the Secretary of State only acts as a filing

office and lacks the authorization to review petition language. *See* Affidavit of Dale A.R. Erquiaga, Exhibit 1 to Defendants Lau and Erquiaga's Motion for Summary Judgment (# 29) ("Erquiaga Affidavit"); *see generally* Plaintiffs' Amended Complaint (# 3). In December 1991 a copy of the Petition was again forwarded to the Secretary of State for filing; again the Secretary of State sent it back with a letter referring the Alliance to the county clerk's office. *See* Erquiaga Affidavit; *see generally* Plaintiffs' Amended Complaint (# 3).

Upon further clarification by counsel for Alliance, Defendant Erquiaga concluded that filing was required. *See* Erquiaga Affidavit. On April 13, 1992, the Secretary of State filed the Petition. *See* Erquiaga Affidavit. However, after receiving complaints regarding the form of petition being circulated, counsel for Alliance requested that Erquiaga review the circulated petition. Erquiaga explained that the two were not similar in language and signatures on the form not filed would not count towards the desired goal of amending the state statute. *See* Erquiaga Affidavit. Erquiaga allegedly failed to advise Alliance of the time limits to get the required number of signatures on the Petition in order to get the issue on the ballot. *See* Plaintiffs' Amended Complaint (# 3). On October 13, 1992, Plaintiff James Sherman Tate, Jr., M.D. ("Tate"), submitted all copies of the Petition to the Registrar of Voters for Clark County. *See* Erquiaga Affidavit. On October 16, 1992, the Registrar certified 26,463 signatures. The Secretary of State, determining that 32,596 signatures were required, deemed the initiative failed. *See* Erquiaga Affidavit. However, Alliance continued to gather signatures for the issue. *See generally* Plaintiffs' Amended Complaint (# 3).

On June 6, 1992, Tate, allegedly attempting to gather signatures in front of the Department of Motor Vehicles and Public Safety ("DMV"), was issued a citation for interfering with the peaceful conduct of business. *See* Exhibit 5 to Plaintiff's Opposition. On June 27, 1992, Tate was imprisoned for the same charge and was allegedly assaulted while in prison. *See* Plaintiffs' Amended Complaint (# 3).

In June 1992, the Nevada Conference of Police and Sheriffs issued a press release ("Press Release") signed by Defendants O.C. Lee and Samuel R. Smith, and quoting Tate. The Press Release called Plaintiff Tate a "biggot" (sic). *See* Exhibit 3 to Plaintiff's Opposition (# 41).

On February 15, 1994, the Plaintiffs Tate and the Alliance filed their Amended Complaint (# 3) alleging violations of 42 U.S.C. §§ 1983, 1985 and 1986. Several motions are presently before the Court.

The first is a Motion for Summary Judgment (# 28) submitted by Defendants Las Vegas Metropolitan Police Department, Nevada Conference of Police and Sheriffs, Sgt. G. Hood, O.C. Lee, and Samuel R. Smith, and filed on May 16, 1994.[1] Defendants, by their Motion (# 28), also requested sanctions. Plaintiffs filed their Opposition (# 41) on July 26, 1994, and Defendants filed a Reply (# 50) on August 16, 1994.

Also before the Court is a Motion for Summary Judgment (# 29) submitted by Defendants Cheryl A. Lau, Secretary of State, and Dale A.R. Erquiaga, Deputy Secretary of State and filed on May 18, 1994. Plaintiffs filed their Opposition (# 42) on August 1, 1994, and Defendants filed a Reply (# 46) on August 11, 1994.

Also before the Court is Plaintiffs' Motion to Set Aside Judgment (# 47) filed on August 11, 1994. Defendants filed an Opposition (# 51) on August 25, 1994. No reply was filed.

## II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

1. Defendant Officer Pillette was named in the body of Defendants' Motion for Summary Judgment (# 28). The Court will treat the motion as one including Officer Pillette.

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact

capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

### III. Discussion

Initially, the Court finds it necessary to address a matter that arises from consideration of the instant Motions. Plaintiffs, in their Oppositions, argue that they have not had sufficient time to complete discovery in order to respond properly to this motion.[2] However, the proper procedural vehicle for such an assertion is a motion pursuant to Fed.R.Civ.P. 56(f). Under Rule 56(f), it is possible for this Court to refuse to grant a party's motion for summary judgment on the ground that the opposing party may require additional time to conduct further discovery. Fed.R.Civ.P. 56(f); *Volk v.*

---

2. This Court issued a Scheduling Order (#2) on February 11, 1994, ordering all discovery to be completed by May 12, 1994. By Stipulation and Order (#27) filed May 9, 1994, the parties agreed to extend discovery until September 9, 1994. Discovery is now closed.

*D.A. Davidson & Co.,* 816 F.2d 1406, 1416 (9th Cir.1987). Here, however, Plaintiffs did not formally move for a continuance based upon the need for further discovery. Informal requests for more time fall short of compliance with Rule 56(f). *Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F.2d 271, 277 (9th Cir.1988).

Furthermore, Plaintiffs have not explained their delay in taking depositions or conducting other discovery. A Rule 56(f) motion is not justified if the party seeking further discovery has been dilatory in conducting discovery. *See Landmark Development Corp. v. Chambers Corp.,* 752 F.2d 369, 372–73 (9th Cir.1985). Plaintiffs' initial Complaint (# 1) was filed with the Court on October 21, 1993. Thus, Plaintiffs had nearly seven months to conduct discovery before Defendants moved for Summary Judgment, and two additional months prior to filing their Opposition. In this particular case, the Court finds that nine months is more than enough time in which to discover evidence. *See Brae Trans., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986) (a party cannot complain if it fails to pursue discovery diligently before summary judgment); *see also Beneficial Standard,* 851 F.2d 271, 277 (9th Cir.1988) (summary judgment affirmed where there were more than six months between the initial appearance and summary judgment). Therefore, the Court will consider the Defendants' Motions on the merits.

### A. Defendants NCPS, Lee and Smith

To sustain an action under § 1983, a Plaintiff must show (1) a person acting under color of state law committed the conduct complained of; and (2) the conduct deprived the Plaintiff of a constitutional right. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). *See* 42 U.S.C. § 1983.

Action taken "under color of state law" is a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749–50, 73 L.Ed.2d 482 (1982); *Screws v. United States,* 325 U.S. 91, 108–113, 65 S.Ct. 1031, 1038–41, 89 L.Ed. 1495 (1945);

*see, United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), *reh'g denied,* 314 U.S. 707, 62 S.Ct. 51, 86 L.Ed. 565 (1941).

[T]he deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor.... [A] defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.

*West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (internal quotations and citations omitted).

Employment by the state is relevant, but not conclusive, to the question of color of law. *Polk County v. Dodson,* 454 U.S. 312, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981). The Court must look to the nature of the conduct involved, as well as the surrounding circumstances, and not simply to the Defendant's official capacity. *See, e.g., Traver v. Meshriy,* 627 F.2d 934, 938 (9th Cir.1980). At a minimum, the acts of state employees must be under the "pretense" of some state law. *Screws,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040. Pretense is lacking if the wrongful act is "not in any way related to the performance of the duties of the state employee." *Dang Vang v. Vang Xiong Toyed,* 944 F.2d 476, 479 (9th Cir.1991), quoting *Murphy v. Chicago Transit Authority,* 638 F.Supp. 464, 467 (N.D.Ill.1986).

Plaintiffs assert that Defendants NCPS, Lee and Smith acted under the "pretense" of state law since the Press Release was written by police officers "solely to protect their interests as law enforcement officers." Moreover, Plaintiffs assert, the content of the Press Release appears to the reasonable prudent reader to be officially supported, advocated and promoted by state law.

Plaintiffs offer the Press Release written on the Nevada Conference of Police and Sheriffs letterhead, with the phrase, "The Voice of Nevada Law Enforcement Of-

ficers" on the bottom of the page. *See* Plaintiffs' Opposition (# 41), Exhibit 3. The letter lacks evidentiary foundation. Moreover, the Nevada Conference of Police and Sheriffs is a voluntary social organization and a branch of an international union of police associations. Plaintiffs have not shown facts indicating the NCPS is in any way related to the performance of the duties of the state employees. In addition, Defendants O.C. Lee and Samuel R. Smith are listed as the President and Secretary/Treasurer, respectively, of that organization. Yet Plaintiffs offer no specific facts indicating that the actions of those Defendants is in any way related to their performance of state duties. While Plaintiffs are entitled to all favorable inferences, mere speculation is not enough to defeat a motion for summary judgment. *Hahn v. Sargent,* 523 F.2d 461, 467 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1231 (E.D.Cal.1985), *aff'd,* 810 F.2d 898 (9th Cir.1987). Because legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment, *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979), the Court finds that the Plaintiffs have not met their burden in producing evidence that any action taken by NCPS, Lee or Smith was taken "under color of state law."

■ Even were this Court to find that Plaintiffs have shown conduct taken by NCPS, Lee and Smith "under color of state law," the question remains whether that conduct resulted in a deprivation of constitutional rights. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). *See* 42 U.S.C. § 1983.

■ Injury to reputation alone is not enough to invoke a cause of action under § 1983. *Fleming v. Department of Public Safety,* 837 F.2d 401, 409 (9th Cir.1988), *cert. denied,* 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988); *see also Paul v. Davis,* 424 U.S. 693, 703, 96 S.Ct. 1155, 1161–62, 47 L.Ed.2d 405 (1976), *reh'g denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976)

(injury to reputation is not a deprivation of a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment). However, injury to reputation, coupled with a deprivation of a liberty or property interest, is enough to invoke a cause of action under § 1983. *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 777–778 (9th Cir.1982).

Tate asserts that he is no longer "at liberty to interact with the community on the same level" as he used to because he has been labeled a "gangster bent on inciting violence" and "a dangerous element . . . someone to be leary of. . . ." *See* Plaintiffs' Opposition. In addition, Tate asserts that he has suffered a deprivation of a property interest because his clientele has dropped off due to his damaged reputation. *See* Plaintiffs' Opposition.

Missing from Tate's allegations are specific facts indicating his loss of a liberty or property interest. Tate's affidavit indicates he has suffered no harm in his liberty or property. *See* Affidavit of James Sherman Tate, M.D., attached as Exhibit 4 to Plaintiffs' Opposition ("Tate Affidavit"). Nor has Tate offered other specific facts indicating a deprivation of his liberty or property interests. "[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). In short, the Court finds that Plaintiffs have not met their burden in producing evidence that Plaintiffs have suffered a deprivation of a constitutional right. Because Plaintiffs have not sustained their burden, this Court will grant summary judgment as to the Defendants NCPS, O.C. Lee, and Samuel R. Smith.

### B. *Las Vegas Metropolitan Police Department*

■ Municipal liability under § 1983 attaches when the municipality itself causes the constitutional violation at issue. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989); *Monell v. New York City Depart-*

*ment of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A direct causal link between a municipal policy or custom and the alleged constitutional deprivation must exist to impose liability on the municipal entity. *City of Canton,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203.

■ It is not enough to allege and prove that a constitutional violation represents a policy for which the local government entity is responsible. Respondeat superior does not impose liability upon a municipality. *City of Canton,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203. Instead, the policy or custom must be a deliberate or conscious choice by a municipality's final policy-making official. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion); *Oviatt v. Pearce,* 954 F.2d 1470, 1477 (9th Cir.1992); *see also St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

■ Moreover, the failure of a municipality to adopt a policy cannot serve as the basis for liability unless the municipality's inaction amounts to "deliberate indifference." *City of Canton,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204. When a need for policy action is so obvious and the likelihood of the violation of constitutional rights so high, the policymakers of the local government entity are deliberately indifferent to the need. *Id.*

■ Plaintiffs point to two incidents in support of their theory that Metro deprived Tate's constitutional rights.[3] The first occurred on June 6, 1992, when Sgt. Hood and Officer Pillette allegedly confined Tate to an area outlined by a red line in front of the DMV building. However, the only facts Plaintiff offers come from the misdemeanor short form incident report, Exhibit 5 to Plaintiffs' Opposition (# 41), and Plaintiff Tate's affidavit.

Plaintiffs have failed to establish any official plan, policy or scheme of Metro to support the allegations of constitutional violations and inadequate training. At most, Plaintiffs can only assert that the Defendant officers gave Plaintiffs an incorrect understanding on June 6, 1992, of when they could collect signatures.[4] The Court finds that this does not qualify as a practice "so permanent and well-settled as to constitute a custom or usage with the force of law." *See, Bouman v. Block,* 940 F.2d 1211, 1231 (9th Cir.1991), citing *St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (internal quotation omitted). The Court further finds that there is no Metro policy or custom present to impose liability on Metro.

■ The second incident allegedly occurred about a week later when 18 officers, including 9 from Metro, surrounded the building in an alleged attempt to intimidate Tate. However, the affidavit of Tate sets forth no specific facts indicating these events. The only reference to this event lies in Plaintiffs' Opposition. As stated above, "legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). The Court finds that Plaintiffs have not sustained their burden in producing evidence that Plaintiffs have suffered a deprivation of a constitutional right.

■ Furthermore, Plaintiff has not shown any inadequate training. For Plaintiffs to survive a motion for summary judgment on a failure to train theory, the municipality's inaction must amount to "deliberate indifference." *City of Canton,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1205. The Court finds that the need for policy action was not so obvious nor was the likelihood of the violation

---

**3.** Plaintiffs also refer to incidents involving the alleged harassment of Dr. Tate by DMV security personnel and employees. *See* Affidavit of Dr. James Sherman Tate, attached as Exhibit 1 to Plaintiffs' Opposition (# 41). As Plaintiff has not produced facts indicating a conspiracy among DMV security personnel and Metro, the Court will not consider these alleged incidents with

regard to the alleged deprivation of civil rights by Metro.

**4.** Even the affidavit of Dr. Tate is unclear as to which Defendants at which time instructed Plaintiff to stand in a certain area. *See,* Affidavit of James Sherman Tate, M.D., attached as Exhibit 4 to Plaintiffs' Opposition ("Tate Affidavit").

of constitutional rights so high as to constitute deliberate indifference. *See, e.g., Dorman v. District of Columbia,* 888 F.2d 159, 164 (D.C.Cir.1989) (need for specific training in suicide prevention beyond what officers received, in contrast with the need for training in use of deadly force, was not so obvious that city's policy could be characterized as deliberately indifferent). The Court finds that there is no inaction on the part of Metro amounting to deliberate indifference. Accordingly, this Court will grant Defendants' motion for summary judgment as to Metro.

### C. Officers Pillette and Hood

A plaintiff may pursue a claim under 42 U.S.C. § 1983 against a person in his individual or his official capacity. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). In an individual capacity claim, a plaintiff must prove the official, acting under color of state law, caused the deprivation of federal rights. *Id.,* at 166, 105 S.Ct. at 3105; *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). The constitutional deprivation suffered must have resulted from the official's "random unauthorized acts." *Jones v. Smith,* 784 F.2d 149, 152 (2nd Cir.1986) (citing *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981)). This necessarily means that the official must have directly and personally participated in the act. *See Kentucky,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05.

Plaintiffs allege that Officers Pillette and Hood violated Plaintiffs' First Amendment rights by issuing Plaintiff a citation.[5] The citation effectively chilled Plaintiff's speech in front of the DMV.

The issuance of a citation alone does not amount to a constitutional deprivation. *See Bell v. Brennan,* 570 F.Supp. 1116, 1119 (E.D.Pa.1983). However, the issuance of a citation as a means to deter speech may amount to a constitutional deprivation. *Slo-*

man *v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994).

Although officials may constitutionally impose time, place, and manner restrictions on political expression carried out on sidewalks and median strips, they may not discriminate in the regulation of expression on the basis of the content of that expression.... State action designed to retaliate against and chill political expression strikes at the very heart of the First Amendment.

*Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994) (internal citations and quotations omitted). An official violates a Plaintiff's First Amendment rights if by his conduct the official deters or chills Plaintiff's political speech and the deterrence is a substantial or motivating factor in the official's conduct in issuing citations and warnings to the Plaintiff. *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994).

In *Sloman,* a witness who was a member of the plaintiff's group testified that an officer pulled her over ostensibly for speeding. Instead of issuing a citation, the officer took the opportunity to criticize her bumper sticker, which supported the plaintiff's cause. In addition, that witness and others testified that the officer was often present when the plaintiff was picketing for his cause, and the officer routinely singled out the plaintiff for warnings and other discussions. Witnesses also testified that the plaintiff's political activity was inhibited by this pattern of conduct. On the basis of this evidence, the court concluded, a jury could reasonably infer that the plaintiff's political activity was a substantial or motivating factor in the officer's decisions to issue a citation. *Sloman,* 21 F.3d 1462, 1469.

In this case, however, Plaintiffs can show no deterrence of their speech, nor can Plaintiffs show that such a deterrence was a substantial or motivating factor in the officer's conduct. Indeed, Tate's affidavit alleges no

---

5. Defendants Hood and Pillette assert that they did not issue the citation but merely filled out a misdemeanor short form after the citation was issued by Mr. Robert Anselmo, the Deputy Director of the DMV. However, Sgt. Hood by signature approved the citation, and both Sgt.

Hood and Officer Pillette signed the misdemeanor short form. *See* Exhibit F to Defendant Hood and Pillette's Motion for Summary Judgment (# 28). The Court finds that both officials directly and personally participated in the issuance of the citation.

facts indicating that conduct by either Officer deterred or chilled his speech. *See* Tate Affidavit. At most, Tate's affidavit alleges that he felt "harassed" by the conduct of the officers. *See* Tate Affidavit. The Court finds that the Officers did not violate Plaintiffs' constitutional rights.

 Qualified immunity is available to government officials if they could have reasonably believed their acts were lawful in light of clearly established law and the information they possessed. *Kennedy v. Los Angeles Police Dept.,* 901 F.2d 702, 706 (9th Cir.1989). Officials will be immune unless the law "clearly proscribed the actions" which they performed. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985). To determine if an official is entitled to qualified immunity, the Court must make three inquiries: (1) the Court must identify the specific right allegedly violated; (2) the Court must determine whether that right was so "clearly established" as to alert a reasonable officer of his constitutional parameters; and (3) the Court must determine whether a reasonable officer could have believed lawful the particular conduct at issue. *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991).

 The Supreme Court explains qualified immunity in the following manner:

Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.

*Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). *See also Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), *reh'g denied,* 501 U.S. 1265, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991). Because the Court finds that Plaintiffs have not propounded sufficient evidence to indicate that Officers Pillette and Hood violated Plaintiffs' constitutional rights,

the Court finds that the Plaintiffs have failed to propound evidence indicating qualified immunity does not apply in the instant case. Accordingly, the Court will grant summary judgment in favor of Officers Hood and Pillette.

### D. Sanctions

 In their Motion for Summary Judgment (# 28), Defendants NCPS, Lee, Smith, Metro, Pillette and Hood, request this Court to impose Rule 11 sanctions on Plaintiffs. Under Fed.R.Civ.P. 11(c)(1)(A), a motion for sanctions must be made separately from other motions or requests and must describe the specific conduct alleged to violate Fed. R.Civ.P. 11(b). A request for sanctions may not be simply included as an additional prayer for relief contained in another motion. *See* Notes of Advisory Committee to Rule 11(b), 1993 Amendment. Further, the motion for sanctions cannot be filed until at least 21 days after being served. Fed. R.Civ.P. 11(c)(1)(A). Because the Defendants' request was not made separately pursuant to Fed.R.Civ.P. 11(c)(1)(A), the Court will deny Defendants' request. While it is in the Court's discretion under Fed.R.Civ.P. 11(c)(1)(B) to issue Plaintiffs an order to show cause why they have not violated Rule 11(b), the Court declines to do so.

### E. Secretary of State Cheryl Lau and Deputy Secretary of State Dale A.R. Erquiaga

 In the absence of consent to suit or waiver of immunity, a state is shielded from suit in federal court by virtue of the Eleventh Amendment. Accordingly, a plaintiff may not maintain a damages action against a state official in her official capacity as well. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984).

 Moreover, even if a state has waived its Eleventh Amendment immunity in federal court, neither a state nor its officials acting in official capacities may be sued as "persons" under § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Ac-

cordingly, any suit against Defendants Secretary of State Cheryl Lau and Deputy Secretary of State Dale A.R. Erquiaga must proceed against them in their individual capacity. *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991).

■■■■■ An official performing discretionary functions has qualified immunity from damages so long as a reasonable official in the defendant's position could have believed his conduct was lawful, in light of clearly established laws and the information possessed by that official at the time of the challenged conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The first inquiry in a qualified immunity case is whether the plaintiff has alleged the violation of a clearly established constitutional right. This is a purely legal question. *Siegert,* 500 U.S. 226, 111 S.Ct. 1789. Once a defendant pleads a defense of qualified immunity, "[o]n summary judgment, the judge appropriately may determine not only currently applicable law, but whether the law was clearly established at the time." *Siegert,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793. "Under the doctrine of qualified immunity, the issue is whether the right infringed was clearly established at the time of the Defendant's complained-of action, and whether a reasonable official could have believed that

his or her actions did not violate that right." *Conner v. Sakai,* 994 F.2d 1408, 1413 (9th Cir.1993).

■■■■■ Defendants Erquiaga and Lau assert that they reasonably believed that their conduct was lawful. Erquiaga indicates in his affidavit that he followed all statutory and constitutional procedures and mandates in dealing with Alliance. *See* Erquiaga Affidavit.

Plaintiffs, in contrast, have not set forth specific facts indicating that Erquiaga and Lau were not reasonable in light of clearly established law and the information available at the time of the alleged violation.[6] Plaintiffs clearly have not sustained their burden in propounding facts indicating that the Plaintiffs have suffered a violation of a constitutional right. The Court therefore finds that the state officials are entitled to qualified immunity. Accordingly, Defendant Lau and Erquiaga's Motion for Summary Judgment will be granted.

### F. *Motion to Set Aside Judgment*

■■■■■ Plaintiffs request this Court set aside its previous Order (# 34) dismissing Defendants Anselmo, Jodra, Moore and Dart in their individual capacities.[7] Plaintiffs make their request under Fed.R.Civ.P. 60(b)(1) [8] and Fed.R.Civ.P. 4(m).[9] *See* Plaintiffs' Motion to Set Aside Judgment (# 47).

---

6. Plaintiffs suggest in their Opposition (# 42) that the Defendants wilfully withheld the "Nevada Guide to Initiative Procedures" in an attempt to sabotage the Alliance's initiative efforts. However, Defendant Erquiaga states in his affidavit that "[t]he Office of the Secretary of State has followed the practice since December 1991 of furnishing upon request to the public an informational pamphlet describing the requirements for filing and circulating petitions." *See* Erquiaga Affidavit. This guide is a summary of the procedures as printed in Chapter 295 of the Nevada Revised Statutes and Article 19 of the Nevada Constitution. *See* Exhibit A to Erquiaga Affidavit. This information was readily available by referring to Nevada law.

7. On June 6, 1994, this Court entered an Order allowing Plaintiff additional time to file notice with this Court that they had properly effectuated service of the Summons and Amended Complaint upon the four Defendants. Because Plaintiffs did not file such a notice, this Court entered an

Order dismissing Defendants Anselmo, Jodra, Moore and Dart pursuant to Fed.R.Civ.P. 4(m).

8. Fed.R.Civ.P. 60(b) states in part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect.... the motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken....

9. Fed.R.Civ.P. 4(m) states in part:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant ... provided that if the plaintiff shows good cause for the

Plaintiffs' counsel claims that they inadvertently did not "follow up" on the initial preparation of the summons, and so only one Summons for each defendant was served on each Defendant, instead of two, indicating the Defendants were served in their individual and official capacities. *See* Affidavit of Dawn M. Lozano, attached to Plaintiffs' Motion to Set Aside Judgment (# 47) ("Lozano Affidavit"), paragraph 4. Plaintiffs' counsel also indicates that the task of complying with this Court's June 6, 1994, Order was "assigned" to another attorney who failed to properly serve the Summons. *See* Lozano Affidavit, paragraph 5.

This Court is authorized under Rule 60(b)(1) to give relief from an order for "mistake, inadvertence, surprise or excusable neglect." Fed.R.Civ.P. 60(b)(1). A party seeking relief must make a showing of why it was justified in failing to avoid mistake or inadvertence. *See United States ex rel Familian Northwest, Inc.,* 21 F.3d 952, 956 (1994) (within court's discretion to refuse to grant relief under 60(b)(1) because inadvertently failing to present invoices which would have resulted in enhanced judgment is not the sort of mistake or excusable neglect contemplated by the rule).

Under Fed.R.Civ.P. 4(m), this Court must extend the time for service if Plaintiff shows "good cause." However, mere inadvertence does not qualify as "good cause" sufficient to allow a plaintiff additional time to effectuate service. *See Wei v. Hawaii,* 763 F.2d 370, 371–372 (9th Cir.1985); *see also West Coast Theatre Corp. v. City of Portland,* 897 F.2d 1519, 1528–1529 (9th Cir.1990). The Court finds that Plaintiff has not shown sufficient "good cause" to allow further attempt at effectuating service. Accordingly, the Court denies Plaintiffs' Motion to Set Aside Judgment.

IT IS THEREFORE ORDERED THAT the Motion for Summary Judgment submitted by Defendants Las Vegas Metropolitan Police Department, Nevada Conference of Police and Sheriffs, Sgt. G. Hood, Officer Pillette, O.C. Lee and Samuel R. Smith (# 28) is granted;

IT IS FURTHER ORDERED THAT the Motion for Sanctions submitted by Defendants Las Vegas Metropolitan Police Department, Nevada Conference of Police and Sheriffs, Sgt. G. Hood, Officer Pillette, O.C. Lee and Samuel R. Smith (# 28) is denied;

IT IS FURTHER ORDERED THAT the Motion for Summary Judgment submitted by Defendants Cheryl Lau, Secretary of State and Dale A.R. Erquiaga, Deputy Secretary of State (# 29) is granted;

IT IS FURTHER ORDERED THAT Plaintiffs' Motion to Set Aside Judgment (# 47) is denied.

failure, the court shall extend the time for

service for an appropriate period....